USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/2/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MIRTILL LEWIS and ELVIRA LEWIS,

                Plaintiffs,

      -v-                                             18-cv-8662 (LJL)

LENDLEASE (US) CONSTRUCTION LMB INC., and    OPINION AND ORDER
THE NEW YORK AND PRESBYTERIAN HOSPITAL,

                Defendants.
─────────────────────────────────────

LENDLEASE (US) CONSTRUCTION LMB INC.,

                Third-Party Plaintiff,

      -v-

X-CELL INSULATION CORPORATION,

                Third-Party Defendant.
─────────────────────────────────────

THE NEW YORK AND PRESBYTERIAN HOSPITAL,

                Cross Claimant,

      -v-

LENDLEASE (US) CONSTRUCTION LMB INC.,

                Cross Defendant.
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Third-Party Plaintiff Lendlease (US) Construction LMB Inc. ("Lendlease") moves for summary judgment on its contractual and common law indemnification claims over and against Third-Party Defendant X-Cell Insulation Corp. ("X-Cell"). Dkt No. 156. X-Cell moves for summary judgment dismissing the second and third causes of action of the amended third-party complaint filed by Lendlease. Dkt No. 145. Defendant New York and Presbyterian Hospital

("NYP") moves for summary judgment granting it a conditional order for contractual indemnification. Dkt. No. 181.

## BACKGROUND

A detailed background of the instant case can be found in the Court's prior Opinion and Order denying Plaintiffs Mirtill and Elvira Lewis' (together, "Plaintiffs") motion for partial summary judgment, and denying in part and granting in part Lendlease and NYP's motions for summary judgment on Plaintiffs' claims. *See* Dkt. No. 192. In brief, Mr. Lewis fell from a ladder while working at a construction site. He and his wife sued the contractor managing the construction, Lendlease, and the owner of premises where construction was taking place, NYP. Plaintiffs' Second Amended Complaint (the "Second Amended Complaint") brought claims against Lendlease and NYP for violations of the New York Labor Law ("NYLL") and New York City Rules and Regulations, for negligence, and for loss of consortium (for Elvira Lewis). Dkt. No. 80. Lendlease in turn filed a third-party complaint (the "Third-Party Complaint") against X-Cell, Mr. Lewis's employer at the time of the incident and a subcontractor of Lendlease, bringing claims for contractual and common-law indemnity and breach of contract. Dkt. No. 88. In its answer to Plaintiffs' Second Amended Complaint, NYP asserted crossclaims against Lendlease and X-Cell for contribution and common-law indemnification and against Lendlease for contractual indemnification and insurance coverage. Dkt. No. 90.

I.  **Lendlease's Third-Party Complaint**

Lendlease's Third-Party Complaint against X-Cell asserts three causes of action: (1) contractual indemnity; (2) common-law indemnity; and (3) breach of contract. Dkt. No. 88 ¶¶ 16–29. The Third-Party Complaint recites relevant terms of Subcontract Number 011 (the "Subcontract") between Lendlease and X-Cell, pursuant to which X-Cell acted as a subcontractor to Lendlease on the project where Mr. Lewis was injured (the "Project"). The

2

Subcontract defines Lendlease as the "Contractor," NYP as the "Owner," and X-Cell as the "Subcontractor" and contains provisions with respect to insurance and indemnification.

> Article 11 of the Subcontract, entitled "Insurance," provides in pertinent part, as follows:
>
> Before commencing the Work and until completion and final acceptance thereof by Owner, Subcontractor shall obtain and maintain at its expense, at least the insurance coverage specified in Exhibit C attached hereto, all from companies and in form and substance acceptable to the Contractor.
>
> As a condition to any payment for the Work, Subcontractor shall furnish a certificate satisfactory to Contractor, from each insurance company showing the required insurance to be in force and stating that the insurance will not be canceled or changed except upon at least thirty (30) days' written notice thereof to Contractor . . . The certificate shall name Contractor, Owner and any other parties required by the Contract Documents as additional insured under the polices required in Exhibit C. The terms and conditions of insurance to be provided by Subcontractor are described in Exhibit C. Neither Owner or Contractor nor any other additional insured, nor their agents, employees or assigns, shall be liable to Subcontractor or its agents, employees or assigns for any loss or damage covered by the insurance policies described in Exhibit C

Dkt. No. 83 ¶ 10; Dkt. No. 88-4, Art. 11

In turn, Exhibit C to the Subcontract requires X-Cell to provide commercial general liability insurance with a combined single limit for bodily injury of at least $2,000,000 per occurrence and at least $2,000,000 in the aggregate, naming Lendlease, NYP, and "[a]ny other entity as required in the Owner/Contractor Agreement" as "additional insureds," with the policy to be primary and noncontributory in favor of all additional insureds. Dkt. No. 88 ¶ 12. X-Cell was also required to provide commercial umbrella liability insurance with a limit of at least $5,000,000 per occurrence and in the aggregate; this coverage was also to apply on a primary and noncontributory basis. *Id.*

> Article 12 of the Subcontract, entitled "Indemnity," provides in pertinent part:
>
> To the full extent permitted by law, Subcontractor agrees to defend, indemnify and save harmless Contractor and Owner, as well as any other parties which Contractor is required under the Contract Documents to defend, indemnify and hold harmless,

3

>and their agents, servants, and employees, from and against any claim, cost, expense, or liability (including attorneys' fees, and including costs and attorneys' fees incurred in enforcing this indemnity), attributable to bodily injury . . . caused by, arising out of, resulting from, or occurring in connection with the performance of the Work by Subcontractor, its subcontractors and suppliers, or their agents, servants, or employees, whether or not caused in part by active or passive negligence or other fault of a party indemnified hereunder; provided, however, Subcontractor's duty hereunder shall not arise if such injury . . . is caused by the sole negligence of a party indemnified hereunder.
>
>Should Owner or any other person or entity assert a claim or institute a suit, action, or proceeding against Contractor involving the manner or sufficiency of the performance of the Work (including attorneys' fees), Subcontractor shall upon request of Contractor promptly assume the defense of such claim, suit, action or proceeding, at Subcontractor's expense. To the fullest extent permitted by law, Subcontractor shall indemnify and save harmless Contractor as well as anyone to be defended, indemnified and held harmless by Contractor and its or their agents, servants and employees, from and against any liability, loss, damage, or expense (including attorneys' fees, and including costs and attorneys' fees incurred in enforcing this indemnity) arising out of or related to such claim, suit, action or proceeding. Nothing in Article 12 shall be construed to require any indemnification which would make Article 12 void or unenforceable or to eliminate or reduce any indemnification or rights which the Contractor or any other party indemnified hereunder have by law.

Dkt. No. 88-4, Art. 12; *see also* Dkt. No. 88 ¶ 11.

Lendlease recites that Mr. Lewis' suit alleges that at the time he was injured he was employed by X-Cell and was performing work "in the course of his employment as a construction laborer" by X-Cell. Dkt. No. 88 ¶¶ 4–5. Lendlease alleges that it has made demands on X-Cell, as well as its comprehensive general liability primary and umbrella insurance carriers, to defend and indemnify it and NYP, and to hold them harmless. *Id.* ¶ 14. According to Lendlease, X-Cell has failed and/or refused to defend and hold harmless Lendlease and NYP to the fullest extent of the insurance and indemnification provisions of the Subcontract. *Id.* ¶ 15.

The first cause of action, for contractual indemnity, alleges that if Plaintiffs sustained the injuries and/or the damages alleged in the Second Amended Complaint, then those injuries and

4

damages would have been sustained in the course of X-Cell's work, and X-Cell would be required to defend, indemnify, and hold harmless Lendlease and NYP from all damages and legal and other costs and expenses as a result of Plaintiff's claims. *Id.* ¶¶ 16–22. The second cause of action, for common-law indemnity, alleges that, to the extent that the injuries sustained by Mr. Lewis are determined to constitute "grave injury" under Section 11 of New York's Workers' Compensation Law, Lendlease would be entitled to common-law indemnity and contribution from X-Cell. *Id.* ¶ 24. In particular, it alleges that if Mr. Lewis sustained damages as set forth in the Second Amended Complaint due to any culpability other than his own, and if such damages are attributable in whole or in part to Lendlease, such damages would have been "sustained by reason of the primary acts of carelessness, recklessness, negligence and/or affirmative acts of omission or commission and/or breach of contract and/or breach of warranty and/or gross negligence and/or breach of statute by [X-Cell] without any negligence or fault of [Lendlease] contributing thereto." *Id.* ¶ 25. Lendlease thus asserts that, in such a circumstance, it would be entitled to have judgment over and against X-Cell for all or any part of a verdict or judgment that may be recovered against Lendlease or NYP. *Id.* ¶ 26. The third cause of action, for breach of contract, alleges that X-Cell failed "to procure the full amount of insurance coverage and to secure in place the indemnification of [Lendlease] and NYP[] pursuant to the terms of the Subcontract to its full extent." *Id.* ¶ 28.

Lendlease moves for summary judgment on Lendlease's first cause of action, for contractual indemnification claims over and against X-Cell.[1] X-Cell moves for partial summary

---

[1] Lendlease also appears to move for summary judgment on a theory of common-law indemnification; the table of contents of its brief in support of its motion states that it "is entitled to contractual and common law indemnification from X-CELL for any verdict above its primary policy limits," Dkt. No. 158 at ECF p. 2, and the preliminary statement of that brief contains similar language, *id.* at 6, but Lendlease's argument regarding indemnification focuses on its

5

judgment dismissing the second and third causes of action of the Third-Party Complaint. It argues that all common law indemnity and/or contribution claims and cross claims against X-Cell are barred pursuant to Section 11 of the Workers' Compensation Law because Plaintiff has not suffered a "grave injury" as defined in that law. Dkt No. 154 at 20–21. It also argues that it is not liable for breach of contract as alleged in the third cause of action because it indisputably acquired the insurance required in the Subcontract. *Id.* at 21–22.

## II.    NYP Crossclaim

NYP and Lendlease entered into an agreement with respect to the Project. The agreement contained an indemnification provision:

> To the fullest extent permitted by law the Contractor shall defend, indemnify and hold harmless the Owner, and Owner's consultants, and agents and employees from and against claims, damages, loses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts that they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 3.18. The Contractor's indemnity obligations shall include, without limitation any costs, fines, penalty or damages arising out of or in connection with its failure to comply with any law, statute, ordinance, rule, regulation or requirement of a public authority.

Dkt. No. 139-1 at § 3.18.1.

NYP brought crossclaims against Lendlease and X-Cell for contribution and common-law indemnification and against Lendlease for contractual indemnification and insurance coverage. Dkt. No. 90. In support of its crossclaim for contribution, NYP alleges that,

---

entitlement to contractual indemnification and does not explain why it is entitled to common-law indemnification. For the reasons expressed below, X-Cell is granted summary judgment on that cause of action.

if Mr. Lewis sustained injuries through any carelessness, recklessness, and or negligence other than his own, it was through the carelessness, recklessness, and negligence of Lendlease or X-Cell, and Lendlease and X-Cell would be liable to NYP on the basis of apportionment.  *Id.* ¶¶ 23–25.  In support of its crossclaim for common-law indemnification, NYP alleges, that if Mr. Lewis sustained injuries through any carelessness, recklessness, and or negligence other than his own, it was through the primary and active carelessness, recklessness, and negligence of Lendlease or X-Cell, with any negligence of NYP being secondary, derivative, and created solely by operation of law, entitling NYP to full indemnification.  *Id.* ¶¶ 26–28.

NYP also alleges that "the co-defendant," Lendlease, and NYP entered into an agreement whereby Lendlease agreed to hold harmless, fully indemnify, and assume the defense of NYP; that such agreement was in effect on the date of Mr. Lewis's incident; and that Lendlease has refused a demand to assume all responsibilities under the agreement.  *Id.* ¶¶ 29–33.  NYP alleges as a result that it is entitled to contractual indemnification.  In its fourth crossclaim, NYP alleges that it is entitled to full indemnification from Lendlease pursuant to the terms of an agreement providing that NYP shall be named as an additional insured on the policies of liability insurance obtained by Lendlease.  *Id.* ¶¶ 34–36.

NYP moves for summary judgment for conditional contractual indemnification by Lendlease.  It argues that it is entitled to such indemnification because of the hold-harmless agreement between it and Lendlease and because it is free from negligence in connection with the incident, notwithstanding any potential liability pursuant to NYP's position as an owner under New York Labor Law ("NYLL") § 240.

## DISCUSSION

**I.     Contractual Indemnification**

Lendlease argues that it is entitled to contractual indemnification from X-Cell in excess of the coverage being offered to it by X-Cell's insurers for any verdict or settlement over X-Cell's policy limits by virtue of the language of the indemnification provision in Article 12 of the Subcontract; this provision provides for indemnification for costs, expenses and liability:

> attributable to bodily injury . . . caused by, arising out of, resulting from, or occurring in connection with the performance of the Work by Subcontractor, its subcontractors and suppliers, or their agents, servants, or employees, whether or not caused in part by active or passive negligence or other fault of a party indemnified hereunder.

Dkt. No. 158.  The pertinent section continues "Nothing in Article 12 shall be construed to require any indemnification which would make Article 12 void or unenforceable or to eliminate or reduce any indemnification or rights which the Contractor or any other party indemnified hereunder have by law."  Dkt. No. 88-4, Art. 12.  An addendum to the Subcontract further states that "Nothing in Subcontract Article 12 shall purport to indemnify or hold harmless the Contractor against liability for damages arising out of bodily injury to persons or damage to property where such indemnification is specifically prohibited by the New York General Obligations Law."  *Id.* at ECF p. 14.  According to X-Cell, summary judgment is not appropriate because there is an issue of fact whether the injury is attributable, at least in part, to Lendlease's failure to perform its duties to maintain a safe worksite or to inspect equipment.  Dkt. No. 164.

NYP also argues that it is entitled to summary judgment on its contractual indemnification claims.  It argues that the contract it entered into with Lendlease required Lendlease "to defend, indemnify and hold harmless [NYP] from and against any injuries arising out of the performance of the work, including work performed by subcontractors of Lendlease . . . to the extent the liability is attributed to the acts or admissions [sic] of the contractor and/or a

subcontractor" and thus for NYP to be indemnified it need only to "show that it was free from negligence in connection with the accident." Dkt. No. 182 at 19–20.

X-Cell and Lendlease both oppose NYP's motion. X-Cell argues that the language of the contract between NYP and Lendlease requires a finding of negligence to trigger the indemnification obligation and that NYP has failed to demonstrate that anyone was negligent. Dkt. No. 166 at 4–6. Lendlease argues that NYP did not accept a tender by Nationwide, X-Cell's insurance carrier, and that they cannot do so now and have waived any indemnification arguments. Dkt. No. 176 at 4–6.

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances.'" *Drzewinski v. Atl. Scaffold & Ladder Co.*, 515 N.E.2d 902, 904 (N.Y. 1987) (quoting *Margolin v New York Life Ins. Co.,* 297 N.E.2d 80, 82 (N.Y. 1973)). "'The right to contractual indemnification depends upon the specific language of the contract.'" *Mejia v. Cohn*, 136 N.Y.S.3d 480, 484 (2d Dep't 2020) (quoting *O'Donnell v. A.R. Fuels, Inc.*, 63 N.Y.S.3d 504, 506 (2d Dep't 2017)). Under New York law, a party cannot receive contractual indemnification from its own negligence. Thus, "'a party seeking contractual indemnification must prove itself free from negligence, because to the extent its negligence contributed to the accident, it cannot be indemnified therefor.'" *Davies v. Simon Property Group, Inc.*, 107 N.Y.S.3d 341, 347 (2d Dep't 2019) (quoting *Cava Constr. Co., Inc. v Gealtec Remodeling Corp.*, 871 N.Y.S.2d 654, 656 (2d Dep't 2009)); *see also Barcliff v. Schindler Elevator Corp.*, 151 N.Y.S.3d 638, 639 (2d Dep't 2021) (same); *Mannino v. J.A. Home Const. Grp., LLC*, 792 N.Y.S.2d 32, 33 (1st Dep't 2005) (holding that indemnification provision in construction contract did not violate New York General Obligations Law § 5-322.1 "since it

9

contains the requisite language limiting [indemnitor's] obligation to that permitted by law" but that neither party was "entitled to summary judgment . . . for contractual indemnification in light of outstanding issues as to whether [indemnitee] was actively negligent and contributed to plaintiff's accident"). Importantly, this bar to indemnification does not apply to parties who have liability not because of their negligence but rather under NYLL § 240(1), because such a finding of liability is not equivalent to a finding of negligence. *Brown v. Two Exch. Plaza Partners*, 556 N.E.2d 430, 433 (N.Y. 1990).

The Court previously held that there is a triable issue whether Lendlease, as contractor and the construction manager of the Project and NYP as the owner were responsible for the safety of the workers at the construction site and therefore liable under NYLL § 240(1) for failing to provide a ladder that provided proper protection and that resulted in Plaintiff's fall. As relevant here, Section 240(1) requires contractors, owners, and their agents involved certain construction activities to "furnish or erect, or cause to be furnished or erected for the performance of such labor . . . ladders . . . which shall be so constructed, placed and operated as to give proper protection to a person so employed," NYLL § 240(1), and "impos[es] [such] liability upon a general contractor for the negligence of a subcontractor, even in the absence of control or supervision of the worksite," *Rizzuto v. L.A. Wenger Contr. Co.*, 91 N.Y.2d 343, 348–49 (1998) (emphasis omitted). In its prior Opinion, the Court held that there was sufficient evidence to support that Lendlease was an agent with supervisory control and authority such that it could be held to the obligations imposed by Section 240(1). *See* Dkt. No. 192 at 20–26. At the same time, however, the Court also granted summary judgment for Lendlease and NYP on Plaintiffs' NYLL § 200 and negligence claims because there was no evidence that they actually supervised or controlled the portion of the work which resulted in Plaintiff's fall and injury and

because there was no evidence from which a jury could find that either party had notice of an unsafe work condition. *Id.* at 27–32.

The Court's prior holding with respect to Plaintiffs' negligence claims are dispositive with respect to Lendlease's and NYP's motions. "When liability attaches solely pursuant to Labor Law § 240 (1), indemnification may be sought from the party actually responsible for the supervision, direction, and control of the work giving rise to the injury." *Cava Const. Co. v. Gealtec Remodeling Corp.*, 871 N.Y.S.2d 654, 656 (2d Dep't 2009); *see also Marulanda v. Vance Assocs., LLC*, 75 N.Y.S.3d 74, 77 (2d Dep't 2018) (affirming grant of summary judgment where defendant was liable to the plaintiff under Labor Law § 240(1) based solely upon its status as the owner of the premises and there was no evidence that the defendant was negligent, or that it directed, controlled, or supervised the manner in which the plaintiff performed his work); *cf. Kelly v. Diesel Const. Div. of Carl A. Morse, Inc.*, 315 N.E.2d 751 (1974). "'While owners and general contractors owe nondelegable duties under the Labor Law to plaintiffs who are employed at their worksites, these defendants can recover in indemnity, either contractual or common-law, from those considered responsible for the accident.'" *Shea v. Bloomberg, L.P.*, 2 N.Y.S.3d 512, 514 (2d Dep't 2015) (quoting *Kennelty v. Darlind Constr.*, 688 N.Y.S.2d 584 (2d Dep't 1999)).

In holding that NYP and Lendlease were not liable in negligence, the Court explained that "[t]here is no evidence that Lendlease assumed or exercised control over that part of the work giving rise to Mr. Lewis's injury," Dkt. No. 192 at 30, and that "[n]o reasonable jury could, on this record, conclude that NYP assumed or exercised the authority to direct X-Cell or its employees how to perform their work," *id.* at 32. Although Lendlease and NYP owed a statutory non-delegable duty for which they may potentially be liable to Plaintiff, X-Cell has not identified, and the record does not reveal, any evidence that would support a finding that either

11

was negligent or that any negligence on their parts led to the accident. Accordingly, Lendlease and NYP have met their burden to demonstrate that there is no evidence supporting a finding of negligence that could bar their entitlement to contractual indemnification clearly provided for by the relevant contracts. Because the Subcontract provides that X-Cell shall indemnify Lendlease "from and against any claim, cost, expense, or liability . . . caused by, arising out of, resulting from, or occurring in connection with the performance of the Work by Subcontractor," Dkt. No. 88-4, Art. 12—a condition which is met here—and because Lendlease was not negligent, it is entitled to summary judgment on its contractual indemnification claim.

The Court's conclusion as to NYP is not altered by Lendlease's argument that NYP waived X-Cell's insurance company's offer to list it as an additional insured or X-Cell's argument that NYP must show that someone was negligent before it is entitled to indemnification by Lendlease. As to the former point, Lendlease does not explain why NYP's ostensible non-acceptance of the insurance offered by X-Cell's insurance carrier has any bearing on NYP's ability to take advantage of its rights under its separate agreement with Lendlease. As NYP points out, it is not seeking summary judgment on a failure-to-procure-insurance claim. *See* Dkt. No. 187 at 8–9.

X-Cell's argument holds more water. The contract between Lendlease and NYP provides that "Contractor shall defend, indemnify and hold harmless the Owner . . . from and against claims . . . arising out of or resulting from performance of the Work . . . but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them." Dkt. No. 139-1 § 3.18.1. It also provides, however, that the "Contractor's indemnity obligations shall include, without limitation any costs, fines, penalty or damages arising out of or in connection with its failure to comply with any law, statute,

ordinance, rule, [or] regulation." *Id.*  NYP is thus entitled to indemnification not only for claims arising out of the Subcontractor's (X-Cell's) negligence but also damages that arise out of or are in connection with Lendlease's failure to comply with NYLL § 240(1).

The language of the indemnification provision appears to leave a gap in coverage whereby NYP would not be entitled to coverage for a verdict returned against NYP for a violation of NYLL § 240(1) without a corresponding finding that X-Cell, or anyone directly or indirectly employed by them, was negligent or that Lendlease itself was also liable under § 240(1).  While it is difficult for the Court to imagine such a situation given the near-necessity of a finding that someone was negligent in allowing an unsecured ladder to be used at the construction site—whether it be Mr. Lewis as the user of the ladder or X-Cell as the supplier of the latter—the Court does not have the benefit of briefing on this point.  Therefore, the Court will grant NYP's motion for a conditional order for contractual indemnification as to any expenses it faces from: Lendlease's violation of NYLL § 240(1); the negligence of X-Cell or anyone directly or indirectly employed by it (the Court having already found that Lendlease was not negligent); or NYP's violation of NYLL § 240(1) insofar as that results from a negligent act of X-Cell or anyone directly or indirectly employed by it.  To the extent that NYP seeks a conditional order for further contractual indemnification, the Court will accept supplemental briefing on a schedule to be jointly agreed upon by the parties.

## II. Common-Law Indemnity

X-Cell argues that all common-law indemnity and/or contribution claims and crossclaims against X-Cell are barred pursuant to New York Workers' Compensation Law § 11 because Plaintiff has not suffered a "grave injury" as defined in that law.  Dkt. No. 154 at 20–21.  Lendlease responds that there is a question of fact whether Plaintiff suffered a complete loss of

13

use of his foot and thus suffered a grave injury and that such question cannot be determined as a matter of law on summary judgment. Dkt. No. 172 at 4–5.

Section 11 of the Workers' Compensation Law provides, in pertinent part, as follows:

> [A]n employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury.'

"Under the 1996 amendments to Workers' Compensation Law § 11, an employer may only be held liable for contribution or indemnification if the employee has sustained a grave injury." *Blackburn v. Wysong & Miles Co.*, 783 N.Y.S.2d 609, 610 (2d Dep't 2004). The purpose of amended Section 11 is to "restore" and protect "the bargain between business and labor—that workers obtain necessary medical care benefits and compensation for workplace injuries regardless of fault while employers obtain a degree of economic protection from devastating lawsuits.'" *Castro v. United Container Mach. Group*, 761 N.E.2d 1014, 1016 (N.Y. 2001) (quoting Governor's Mem. approving L 1996, ch. 635, 1996 N.Y. Legis. Ann., at 460). To that end, the statute defines a list of "grave injuries" that is narrow and complete. *Id.*; *see also Rubeis v. Aqua Club Inc.*, 821 N.E.2d 530, 534 (N.Y. 2004) ("The injuries enumerated as grave were deliberately both narrowly and completely described. The list is exhaustive, not illustrative: it is not intended to be extended absent further legislative action." (internal quotation marks and citations omitted)). Section 11 defines a grave injury as:

> [O]nly one or more of the following: death, permanent and total loss of use or amputation of an arm leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia, or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger, or an acquired injury to the brain caused by external force or its resulting permanent or total disability.

The "loss of use" must also be "total"; "[p]artial loss is insufficient." *Kraker v. Con. Edison Co., Inc.*, 806 N.Y.S.2d 651, 653 (2d Dep't 2005); *see also Hernandez v. Seadyck Realty Co.*, 77

14

N.Y.S.3d 50, 51 (1st Dep't 2018) (granting summary judgment and concluding that plaintiff did not suffer total loss of use of hand when even though he "still had severe limitations in use of his right hand" he could close his fingers enough to grasp a door handle or a cup); *Barclay v. Techno-Design, Inc.*, 4 N.Y.S.3d 329, 330–31 (3d Dep't 2015) (granting summary judgment where "plaintiff had not lost all function or use of his right hand"); *Fleischman v. Peacock Water Co.*, 858 N.Y.S.2d 421, 423 (3d Dep't 2008) (affirming grant of summary judgment where plaintiff not was claiming a total loss of use of his leg or that he retained only "passive movement" in that limb).

X-Cell has established its entitlement to summary judgment on the second cause of action. Lendlease argues that there is a jury question whether Plaintiff has suffered a permanent and total loss of the use of a foot. But it identifies no competent medical evidence that would support such a finding. Plaintiff himself has not claimed that he suffered permanent and total use of the loss of his foot. He broke both of his ankles as a result of the incident, *see* Dkt. No. 153-4, and suffers from pain, but he is able to drive with his right foot on the gas pedal and the brake, *see* Dkt. No. 153-3 at 37. Accordingly, there is no evidence from which a jury could find that he suffered a "grave injury," and Lendlease is not entitled to common-law indemnification. *See Picaso v. 345 East 73 Owners Corp.*, 956 N.Y.S.2d 27, 28 (1st Dep't 2012) ("Tower may not be held liable for common-law indemnification of defendants since plaintiff does not allege, nor does his bill of particulars evince, a 'grave injury' within the meaning of Workers' Compensation Law § 11."); *Gomez v. V&G Electric, Inc.*, 814 N.Y.S.2d 604 (1st Dep't 2006) (affirming summary judgment dismissal of claim for indemnification or contribution where no medical evidence supported existence of grave injury).

### III. Breach of Contract

X-Cell argues that it is entitled to summary judgment on the third cause of action alleging breach of the Insurance provision of the Subcontract because the undisputed evidence established that it purchased the policies required by the agreement. *See* Dkt. No. 153-5. Lendlease does not dispute that X-Cell acquired the requisite insurance and its admits that it "is being defended and indemnified by X-Cell's insurance carriers up to its coverage limits." Dkt. No. 172 at 5. It argues, however, that it is entitled to seek indemnification for settlements or judgments that exceed the limits of an insurance policy. Dkt. No. 172 at 6 (citing *Allianz Glob. Corp. & Specialty, N.A. v. Sacks*, 2010 WL 3733915, at *5 (S.D.N.Y. Sept. 23, 2010)). It thus claims that it is entitled to pursue its claims for contractual indemnification against X-Cell.

Lendlease's opposition does not respond to X-Cell's argument or identify a genuine fact issue that would require trial as to the third cause of action. The third cause of action alleges that X-Cell breached the Insurance provision by failing to procure the required insurance. The undisputed evidence establishes it purchased that insurance. Lendlease is correct that X-Cell's purchase of the insurance does not itself relieve X-Cell of liability on a contractual indemnification theory for any recovery in excess of the limits of the insurance policy. But the most that argument does is to establish that an order of summary judgment to X-Cell on Lendlease's third cause of action does not itself forestall Lendlease's ability to pursue X-Cell on the first cause of action. It is not enough to deprive X-Cell of the right to summary judgment on the third cause of action itself.

## CONCLUSION

Lendlease's motion is GRANTED IN PART and DENIED IN PART; it is entitled to contractual indemnification from X-Cell in excess of the coverage being offered to it by X-Cell's insurers, but it is not entitled to common-law indemnification to the extent it seeks it. X-Cell's

motion for summary judgment on Lendlease's claims against it is GRANTED; the third-party claims against X-Cell for common-law indemnification and contribution and for breach of contract are dismissed. NYP's motion for a conditional order for contractual indemnification is GRANTED to the extent described in this Opinion.

The Clerk of Court is respectfully directed to close Dkt. Nos. 152, 156, and 181.

SO ORDERED.

Dated: May 2, 2022
  New York, New York

_____
LEWIS J. LIMAN
United States District Judge